1  GREGORY K. JONES, State Bar No. 181072
     gjones@stradlinglaw.com
2  STRADLING YOCCA CARLSON & RAUTH LLP
   10100 N. Santa Monica Blvd., Suite 1450
3  Los Angeles, CA 90067
   Telephone:  424-214-7000
4  Facsimile:  424-214-7010

5  Counsel for Debtor
   GRDN Hospitality, LLC
6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DIVISION OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | CASE NO. 2:25-bk-16321-DS |
| GRDN HOSPITALITY, LLC, | Chapter 11 |
| Debtor. | **MOTION OF DEBTOR AND DEBTOR IN POSSESSION TO ENTER INTO CONTRACT WITH THIRD PARTY BREWERY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LYNNE WEAVER IN SUPPORT THEREOF** |
| | [No Hearing Unless Party Requests] [LBR 9013-1(o)] |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; M. DOUGLAS FLAHAUT, THE SUBCHAPTER V TRUSTEE; AND ALL INTERESTED PARTIES:**

GRDN Hospitality, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "Bankruptcy Case"), hereby moves (the "Motion") the United States Bankruptcy Court, Central District of California, Los Angeles Division, for entry of an order authorizing it to enter into a Contract Brewing and Licensing Agreement (the "Agreement") with a third party brewery (the "Brewery").

As set forth in the Motion, the Debtor believes that there is a sound business justification to enter into the Agreement, as it will allow for the production of the Debtor's product at a lower cost than what is presently incurred.  This Motion is based upon 11 U.S.C. § 363(b) and Rule 9013-1 of the Local Rules for the Bankruptcy Courts of the Central District of California (the "Local Rules"), the Memorandum of Points and Authorities and Declaration of Lynne Weaver annexed to the Motion, this Notice, the entire record in this case, the statements, arguments and representations of counsel to be made at a hearing on the Motion, if any, and any other evidence properly presented to the Court.  Parties wishing to receive a complete set of the Motion and supporting papers may do so by making request in writing to the Debtor's counsel, whose contact information appears in the top-left corner of the first page of this Notice.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(i)     Granting the Motion and the relief requested herein, in its entirety;

(ii)    Authorizing the Debtor to enter into the Agreement; and

(iii)   Granting such other and further relief as this Court deems just and proper under the circumstances.

DATED:  December 4, 2025          STRADLING YOCCA CARLSON & RAUTH LLP


By:   /s/ *Gregory K. Jones*
      Gregory K. Jones
      Counsel for Debtor and Debtor in
      Possession

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
LOS ANGELES

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTUAL BACKGROUND**

    **A.    General Background**

GRDN Hospitality, LLC (the "Debtor") filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and elected subchapter V on July 24, 2025 (the "Petition Date"). The Debtor is operating its business and managing its financial affairs as a debtor in possession pursuant to §§ 1182(2) and 1184 of the Bankruptcy Code. The United States Trustee (the "UST") appointed M. Douglas Flahaut as the subchapter V trustee (the "Trustee") pursuant to 11 U.S.C. § 1183(a).

The Debtor operates an award-winning craft brewery in Inglewood, California. The Debtor, which was founded in 2013, is the first craft brewery in Inglewood and proudly stresses the importance of promoting a positive community. The Debtor also was the first brewery in Los Angeles County to hire a female brewmaster. The Debtor's tasing room is near SoFi Stadium, the Forum, and the Intuit Dome.

The Debtor has approximately 12-15 core and seasonal beers on tap at all times, including Kolsch-Style lagers, IPAs, ales, porters, seltzers, and nonalcoholic beers. The Debtor's tasting room is located at 1031 West Manchester Blvd., and customers can attend the tasting room on a first-come, first-serve basis. Customers enjoy multiple big-screen TV monitors and can order food from local food trucks. Further, patrons can purchase core and seasonal beers (4-pack formats) or kegs to go.

    **B.    Postpetition Events**

On October 22, 2025, the Debtor filed its "Debtor's Chapter 11 Subchapter V Plan" (the "Plan") [Docket No. 79]. As stated in prior pleadings, the Plan reflected the Debtor's best estimate of what it believed it could accomplish post-confirmation, assuming that it is able to reach agreements with its first secured

lender, Live Oak Banking Company ("Live Oak") and its lessor, Manchester Business Park LLC ("Manchester").  As of the time of the filing with this Report, the Debtor continues to negotiate with Live Oak, Manchester and their respective counsel.  The Debtor has made significant progress with both parties and is cautiously optimistic that it will be able to present settlements with both parties within the next 30-60 days.

In prior pleadings, the Debtor stated that it was also considering contracting with other parties to promote the Debtor's brand.[1]  After discussions with a handful of parties, the Debtor has determined to enter into a "Contract Brewing and Licensing Agreement" (the "Agreement") with a third party brewery (the "Brewery").[2]  A true and correct copy of the Agreement, with certain information redacted, is attached to the Weaver Declaration as Exhibit A.

The Agreement is on a month to month basis.  The Agreement discloses that the Debtor owns certain trademarks, copyrights, and other intellectual property (collectively, the "IP").  Additionally, the Agreement states that the Brewery is a brewer of beer and possesses the necessary Federal and state permits and licenses to produce and sell beer.  Under the Agreement, the Debtor will provide the Brewery with a non-exclusive, non-assignable license to use the IP to produce beer on behalf of the Debtor.

The Debtor will issue purchase orders for the beer to the Brewery, and the Brewery will brew, store, and take other steps to prepare the beer for shipment. The Debtor will pay the Brewery certain specified fees associated with the cost to manufacture the beer, and the Brewery will retain title to the beer until it is

---

[1]    *See* "Emergency Motion for Authority to Use Cash Collateral on an Interim and Final Basis" [Docket No. 18], filed on July 28, 2025, at 6 ("The Debtor is considering a number of reorganization options, including the potential renegotiation of its existing lease and/or to keep the Three Weavers brand alive by contracting with other entities in the brewing industry.").

[2]    The third party brewery has requested to remain unnamed.  The Debtor will provide the relevant information about the Brewery to the Court under seal if necessary.

1  removed from the Brewery.  The Debtor believes that this Agreement will be

2  complementary to the Debtor's forthcoming amended plan.

3  **II.    LEGAL DISCUSSION**

4        Section 363(b) provides that a debtor "after notice and a hearing, may use,

5  sell, or lease, other than in the ordinary course of business, property of the estate."

6  11 U.S.C. § 363(b).  To approve use, sale or lease of property other than in the

7  ordinary course of business, the Court must find "some articulated business

8  justification."  *See*, *e.g.*, *In re Catalina Sea Ranch, LLC*, No. 2:19-bk-24467-NB,

9  2020 Bankr. LEXIS 1083, at *16 (Bankr. C.D. Cal. Apr. 13, 2020); *Comm. of*

10  *Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d

11  Cir. 1983); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986)

12  (implicitly adopting the "sound business judgment" test of *Lionel Corp.* and

13  requiring good faith).

14        The Debtor respectfully submits that there is an articulated business

15  justification for entry into the Agreement.  Presently, the Debtor is manufacturing

16  its own beer at its Inglewood location.  Through the Agreement, the Debtor will

17  now be able to produce its products at a lower cost, thereby increasing gross

18  margin while the Debtor finalizes its negotiations with Live Oak and Manchester

19  on the terms of the Plan.  The Brewery that provides the services under the

20  Agreement has fixed, built in costs that the Debtor will not have to separately incur

21  for the production of its beer.  Presently, the Debtor is unable to consistently sell its

22  beer for more than it costs the Debtor to produce such beer.  Hence, entry into the

23  Agreement will assist in the stabilization of the Debtor's operations and provide a

24  potential source of increased income that could be distributed to creditors under the

25  terms of an amended Plan.

26  **III.    CONCLUSION**

27        WHEREFORE, the Debtor respectfully requests that the Court enter an

28  order:

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
LOS ANGELES

-5-

1       (i)     granting the relief requested herein;

2       (ii)    authorizing the Debtor to enter into the Agreement; and

3       (iii)   granting such other and further relief that the Court deems just and

4               proper under the circumstances.

5

6    DATED:  December 4, 2025          STRADLING YOCCA CARLSON & RAUTH
                                        LLP
7

8                                       By:   /s/ Gregory K. Jones
                                              *Gregory K. Jones*
9                                             Counsel for Debtor

# DECLARATION OF LYNNE WEAVER

I, Lynne Weaver, declare as follows:

I am the CEO of GRDN Hospitality, LLC ("the "Debtor").  I submit this Declaration in support of the Debtor's petition and the contemporaneously filed "Motion of Debtor and Debtor in Possession to Enter Into Contract With Third Party Brewery" (the "Motion").  As CEO, I am generally familiar with the Debtor's business, financial condition, policies and procedures, day to day operations and books and records.   Except as otherwise indicated, the facts set forth in this declaration (the "Declaration") are based upon my personal knowledge, my review of relevant documents, information provided to me by employees and consultants working under my supervision, or my opinions based on experience, knowledge, and information concerning the Debtor's operations and financial condition.  If called upon to testify, I would testify competently to the facts as set forth in the Declaration.

1.      On July 24, 2025 (the "Petition Date"), the Debtor commenced this subchapter V case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor operates an award-winning craft brewery in Inglewood, California. The Debtor, which was founded in 2013, is the first craft brewery in Inglewood and proudly stresses the importance of promoting a positive community.  The Debtor also was the first brewery in Los Angeles County to hire a female brewmaster.  The Debtor's tasing room is near SoFi Stadium, the Forum, and the Intuit Dome.

3.      The Debtor has approximately 12-15 core and seasonal beers on tap at all times, including Kolsch-Style lagers, IPAs, ales, porters, seltzers, and nonalcoholic beers.  The Debtor's tasting room is located at 1031 West Manchester Blvd., and customers can attend the tasting room on a first-come, first-serve basis. Customers enjoy multiple big-screen TV monitors and can order food from local

1  food trucks.  Further, patrons can purchase core and seasonal beers (4-pack

2  formats) or kegs to go.

3      4.    Attached hereto as Exhibit "A" is a copy of the proposed "Contract

4  Brewing and Licensing Agreement" (the "Agreement").  The brewery that will be

5  executing the Agreement with the Debtor has asked to remain confidential.

6      5.    I believe that entry into the Agreement represents sound business

7  judgment.  Presently, the Debtor is manufacturing its own beer at its Inglewood

8  location.  Through the Agreement, the Debtor will be able to produce its beer at a

9  lower cost, thereby increasing gross margin while the Debtor finalizes its

10  negotiations with Live Oak and Manchester about the terms of an amended Plan.

11      6.    The Brewery providing services under the Agreement has fixed, built

12  in costs that the Debtor will not have to compensate or reimburse for the

13  production of its beer.  Presently, the Debtor is unable to consistently sell its beer

14  for more than it costs the Debtor to produce such beer.  Hence, entry into the

15  Agreement will assist in the stabilization of the Debtor's operations and provide a

16  potential flow of income to provide for payment to creditors in the case.

17      I declare and verify under penalty of perjury that the foregoing is true and

18  correct to the best of my knowledge, information, and belief.

19      Executed on this 4th day of December, 2025, at _____Inglewood_____, California.

20

21  _____
    Lynne Weaver

22

23

24

25

26

27

28

# EXHIBIT A

## CONTRACT BREWING AND LICENSING AGREEMENT

This Contract Brewing Licensing Agreement (hereinafter "Agreement") is effective as of XXX____, 202X by and between XXXX a XXXX company ("Brand Owner") with its principal place of business located at XXXXX and XXX a XXXX company ("Brewery") with its principal place of business located at XXXXXXXXX, XXXXX, California XXXXX.  Brand Owner and Brewery are individually and collectively referred to herein as "Party" and the "Parties."

## RECITALS

A.      Brewery is a brewer of beer (as defined in 27 U.S.C. § 5052(a) or any successor statute) possessing the necessary federal and state permits and licenses to produce and sell beer.  Brewery also has the manufacturing capability of producing non-alcoholic beer in accordance with reasonable industry standards. Brewery also is a maker of wine and a bonded wine cellar (as defined in U.S.C. § 5392(f) or any successor statute) possessing the necessary federal and state permits and licenses to produce and sell wine.

B.      Brand Owner owns the trademarks, recipes, and other intellectual property associated with the beers listed on Schedule A to this Agreement ("Products") and wishes to appoint Brewery to brew and sell the Products.

Accordingly, the parties, for adequate and sufficient consideration the sufficiency of which is herein acknowledged, agree as follows:

1.      **Term and Termination**.

(a)      Term.  This Agreement shall commence on the date written above and continue month to month.

(b)      Termination of Agreement for Cause.  In addition to each Party's right to elect to not extend the Term pursuant to Section 1(b), which it may elect for any or no reason, the Parties shall have the additional rights below to terminate this Agreement.

(i)      Each Party shall have the right to immediately terminate the Agreement if the other Party undertakes fraudulent conduct towards the other party or takes deliberate action to harm the other party's market position, goodwill, or reputation.

(ii)      Each Party shall have the right to immediately terminate the Agreement if the other Party fails to pay monies due within 10 days following the due date thereof.

(iii)      Brewery shall have the right to immediately terminate the Agreement if it is notified by any governmental authority, or is otherwise informed after the advice of counsel, that Brewery is required to have any license or approval to perform its obligations contained in this Agreement (including, without limitation, as related to the production and sale of cannabis products) other than any such permits and approvals that Brewery has in the ordinary conduct of its business.

(iv)      In the event Brewery is provided written notice by any state or federal regulatory authority, or determines in its reasonable discretion with the advice of counsel, that the

Brewery's manufacture and sale of the Brewery Products pursuant to this Agreement require a license or permit of any kind.

Any of the aforementioned rights to terminate the Agreement shall be effected solely with written notice by the terminating Party to the other Party. Any termination of this Agreement by a Party under this Section 1(c) shall not limit such terminating Party's rights to indemnification, compensation, damages or other remedies under this Agreement or under applicable law.

2.    **Intellectual Property**.

(a)    Brand Owner represents and Brewery agrees that Brand Owner owns the trademarks, copyrights, and other intellectual property set forth on <u>Schedule A</u> attached hereto (collectively the "Brand IP") associated with the Brand Owner End Products.

(b)    Intellectual Property: Brand Owner represents that it owns the trademarks, recipes, copyrights, and other intellectual property (collectively the "IP") associated with the Products. Brand Owner grants to Brewery, a non-exclusive, non-assignable license to use the IP in connection with producing the Products on behalf of Brand Owner. The Parties acknowledge and agree that upon termination of this Agreement, all rights and title to the IP shall revert to Brand Owner and Brewery shall promptly cease all use of the same. Brewery shall amend the way in which it uses the IP promptly upon notice from Brand Owner, provided however that Brand Owner shall be responsible for any reasonable expenses of Brewery incurred thereby.

3.    **Appointment and Brand Owner Obligations**.

(a)    During the Term Brand Owner appoints Brewery as its non-exclusive provider of the Brand Owner Products and any such other product components that the parties may, from time to time, agree to add to the scope of this Agreement.

(b)    Brand Owner acknowledges that Brewery may provide Brand Owner from time to time with process handling requirements to maintain the Brand Owner Products in a state fit for consumption. Such instructions are provided for the use and benefit of Brand Owner without representation, warranty, or other commitment.

4.    **Brewery Production Obligations**.

(a)    During the Term, Brewery shall brew, manufacture, process, code, pack, store, test, handle, palletize, and otherwise prepare the Products for shipment (collectively the "Services") in accordance with the terms of this Agreement. Brewery retains title to the Products until they are taxpaid or removed from Brewery. Brewery is responsible for the filing for and receipt of State and Federal label and formula approval for Products. Brewery is responsible for payment of State and Federal excise tax on the Products. Brewery will maintain all required Records related to the Products. Notwithstanding anything to the contrary contained herein, Brewery shall not sell, license, pledge, assign, or transfer IP owned by Brand Owner to any person or entity other than Brand Owner without Brand Owner's prior written consent.

(b)    Brewery Product taste, quality, and clarity are the responsibility of the Brewery. Brand Owner may appoint a representative ("BO Representative") to be present at the time Brand Owner Products are being manufactured for the purposes of reviewing Brand Owner Product

manufacturing practices are in compliance with Product Specifications (hereinafter defined).  Brand Owner is encouraged to taste the Brand Owner Products during the production process, with Brewery personnel supervision, and prior to packaging Brand Owner Products for pickup.  If Brand Owner Products delivered to Brand Owner does not adhere to Specifications, such Brand Owner Products shall be destroyed and Brewery shall replace such Brand Owner Products as soon as reasonably practicable thereafter. If Brand Owner directs Brewery to destroy Brand Owner Products that adhere to Specifications, Brand Owner shall remain obligated to pay Brewery therefor.

(c)     Brewery shall manufacture the Brand Owner Products in accordance with the requirements attached hereto as <u>Schedule B</u> ("Specifications").  Additionally, Brewery may, upon prior written notice to Brand Owner, decline to follow Brand Owner's instructions if such instructions: (i) violate any law, regulation, or governmental policy (collectively a "Law"); or (ii) pose a threat to the equipment or personnel of Brewery.

(d)     Brewery warrants to Brand Owner that all Brand Owner Products packed, stored, handled, and released will be fit for human consumption, and in strict accordance with reasonable industry quality standards and the Specifications.  Brewery further warrants to Brand Owner that all Brand Owner Products will strictly comply with all federal, state, and local laws and regulations material to such Brand Owner Products ("Laws"), including, without limitation, the Federal Food, Drug, and Cosmetic Act, the Federal Consumer Product Safety Act, and standards and regulations promulgated thereunder.  Brewery warrants that the Brand Owner Products: (i) will, when received, materially conform to the description on the face of the Purchase Order relating to such Brand Owner Products; and (ii) will be free of defects in materials and workmanship within Brewery's control.  Return of materially nonconforming goods to the due to defects in materials and workmanship within Brewery's control to Brewery shall be at Brewery's sole cost.

(e)     Brewery agrees to maintain confidentiality of the business relationship between the parties, and not to promote, announce, disclose, whether verbal, written, social media, or digital media, directly or indirectly and warrants that employees and contractors of the Brewery shall maintain equal confidentiality; unless Brand Owner provides prior written consent to include approval of content.  Confidentiality and use of Brand Owner's Intellectual Property inclusive of this Section 4(f), Section 2 of this Agreement shall survive indefinitely and Section 7 shall survive the termination of this Agreement for a term of three (3) years.

(f)     This Agreement shall not limit the Brewery from its production of the Brewery Products for any other purpose, including retail or wholesale sales or any agreement by Brewery with any other person related to the manufacture of Brewery Products on a white-label basis or the use of Brewery Products by Brewery or any other person as a product component of other products, whether or not competitive with Brand Owner Products.

5.     **Purchase Order**.  Brand Owner shall issue purchase orders for the Brand Owner Products to Brewery under the terms of this Agreement by email to XXXX@XXXXX.XXX pursuant to a written purchase order form previously approved by Brewery from time to time ("Purchase Order").  Brewery may, but does not guarantee it will, accept additional Purchase Orders.  Purchase orders must be made by Brand Owner with at least six weeks lead time. A Purchase Order must be for a minimum amount of 30 bbl of Brewery Products and in additional 30 bbl increments, unless otherwise agreed by the Brewery.

6.      **Fees and Consideration**.  Brand Owner will pay Brewery fees associated with the cost to manufacture the Brand Owner Products in accordance with the terms listed in Schedule C.  The fees, and other consideration, will be determined per each recipe and packaging format in advance of packaging, agreed to by both parties.

7.      **Confidentiality and Explicit Non-Disclosure**.  Brewery hereby agrees to maintain complete confidentiality regarding this agreement and the ongoing business relationship between the parties, and to only disclose the agreement as it relates to regulatory authorities or accounting and tax filing requirements, to keep all confidential or proprietary information provided by Brand Owner to Brewery, including but not limited to recipes and manufacturing processes ("Confidential Information") in strict confidence and will not, without the express prior written consent of Brand Owner, directly or indirectly, use unless in support of this agreement, communicate or divulge such confidential information to any person whether or so marked as confidential or proprietary.  Brewery shall treat all Confidential Information as a trade secret and take reasonable measures to maintain the trade secret status of such Confidential Information.  Notwithstanding the foregoing, Brewery may disclose Confidential Information if such disclosure is required by a court or other governmental agency of competent jurisdiction, provided Brewery shall promptly notify Brand Owner and cooperate fully with Brand Owner in obtaining any available protective order or the equivalent prior to the disclosure of such information.  In the event of any breach or threatened breach of this section, Brand Owner shall be entitled, in addition to any other legal rights or remedies which it may have, to maintain an action for preliminary and permanent injunctive relief, it being agreed by the parties hereto that the substantial and irreparable harm which Brand Owner would sustain upon any such breach is impossible to ascertain in advance and that the award of monetary damages therefore would be wholly inadequate.  Brewery shall be responsible for Brand Owner's costs and expenses, including without limitation, reasonable attorneys' fees and court costs incurred in enforcing the provisions of this section.

8.      **Customer Identification, Promotion, and Marketing**.  Brand Owner shall remain solely responsible for promoting and marketing the Brand Owner Products, whether to distributors, retailers, or the general public.  Brand Owner shall not, without the prior written approval of Brewery, undertake any promotion that could result in any bill-back, charge-back, set-off, or other charge to Brewery.

9.      **Compliance with Law**.

(a)      Brewery shall maintain the federal and state licenses necessary to manufacture the Brewery and Brand Owner Products and shall conduct its manufacturing operation in compliance with all applicable Laws, including but not limited to necessary formula approvals and COLA approvals required of the Brewery and Brand Owner Products.

(b)      Brand Owner shall obtain and maintain any federal, state, and local licenses necessary for it to manufacture, promote, market, and sell the Brand Owner Products and shall conduct such activities in compliance with all applicable Laws.

(c)      The parties shall, upon reasonable notice, promptly furnish such information and assistance, as reasonably requested by the other party in connection with any legal or quasi-legal proceeding, licensing, or permitting, including documents and proceedings related to the California Alcoholic Beverage Control ("ABC") and the federal Alcohol and Tobacco Tax and Trade Bureau ("TTB").

10.    **Disputes**.

(a)    The fees and expenses of the arbitrator(s) shall be borne equally by the parties.

11.    **Indemnification**.

(a)    Brewery shall indemnify Brand Owner and its directors, officers, employees, shareholders, partners, agents, and affiliates against all third-party claims, liability, and expenses (including legal fees) arising out of or relating to any defects or irregularities in any of the Brand Owner Products sold under this agreement that exist upon delivery to Brand Owner or Brewery's breach of any obligation or warranty contained in this Agreement, except to the extent any of the claims arise out of or are related to Brand Owner's negligence or misconduct.  Brewery shall give prompt notice to Brand Owner of any claim or potential claim for indemnification under this section.

(b)    Brand Owner shall indemnify Brewery and its directors, officers, employees, shareholders, partners, agents, and affiliates against all third-party claims, liability, and expenses (including legal fees) arising out of or relating to Brand Owner's production, storage, transportation, sale, promotion, marketing of the Brewery Products and Brand Owner Products, use of Brand Owner's IP by Brand Owner and its representatives, or Brand Owner's breach of any obligation or warranty contained in this Agreement, except to the extent any of the claims arise out of or are related to Brewery's negligence or misconduct.  Brand Owner shall give prompt notice to Brewery of any claim or potential claim for indemnification under this section.

12.    **Insurance**.  Brewery shall obtain and maintain general liability insurance in an amount not less than $1,000,000 and shall name Brand Owner as an additional insured on such policy.  Brand Owner shall obtain and maintain general liability insurance in an amount not less than $1,000,000 and shall name Brewery as an additional insured on such policy.  Each party shall supply the other with proof of such insurance upon request.

13.    **Notice**.  All notices permitted, required or provided for by this Agreement shall be made in writing, and shall be deemed adequately delivered if delivered by hand, by electronic mail, by the mailing of the notice in the U.S. mail, pre-paid certified or registered mail with return receipt requested, or by a nationally recognized overnight courier service, to the parties at their respective addresses set forth above or to any other address designated by a party hereto by written notice of such address change.  Notices delivered personally and electronically shall be deemed given and received as of the date of actual receipt, mailed notices shall be deemed given when mailed and received four (4) business days thereafter.  Notices sent by overnight courier service shall be deemed given when delivered to the courier service and received one (1) business day later.

14.    **Miscellaneous**.

(a)    <u>Entire Agreement</u>.  This Agreement, together with the documents referred to in this Agreement, constitute the entire agreement between the parties with respect to its subject matter and constitutes and supersedes all prior agreements, representations, and understandings of the parties, written or oral.

(b)    <u>Amendment</u>.  This Agreement may only be amended by a written instrument signed by both parties.

(c)    Waiver.  A party's failure to exercise or delay in exercising any right, power, or privilege under this Agreement shall not operate as a waiver; nor shall any single or partial exercise of any right, power, or privilege preclude any other or further exercise thereof.

(d)    Governing Law.  This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of California, without regard to its conflict of laws rules.

(e)    Attorneys' Fees.  In the event of any action to enforce rights under this Agreement, the prevailing party shall be entitled its costs and expenses, including reasonable attorneys' fees, incurred in connection with such action.

(f)    Force Majeure.  A party shall not be liable for any failure of or delay in the performance of this Agreement for the period that such failure or delay is due to causes beyond its reasonable control, including but not limited to acts of God, war, strikes or labor disputes, embargoes, government orders, weather related events, or any other force majeure event; except the obligation to make payment for Brand Owner Products ordered and delivered.

(g)    Relationship of the Parties.  The parties are independent contractors and have no power or authority to assume or create any obligation or responsibility on behalf of each other.  This Agreement shall not be construed to create or imply any partnership, agency, joint venture, or employer-employee relationship between the parties.

(h)    Severability.  If any term or other provision of this Agreement is determined to be invalid, illegal, or incapable of being enforced by any rule or law, or public policy, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

*[Signature Page follows]*

        IN WITNESS WHEREOF, this Agreement is executed to be effective as of the date first set forth above.

**Brewery**                            **Brand Owner**


**XXXXX**                            **XXXXX**


Signed:_____    Signed:_____
By:_____    By:_____
Title:_____    Title:_____
Date:_____    Date:_____

*[Signature Page to Contract Brewing Licensing Agreement]*

**Schedule A**

**Brand Owner Intellectual Property**

[Insert Party Beer label, Brand image, and other related trademarks]

**Schedule B**

**Specifications**

**Schedule C**

**Fees and Consideration**

Brand Owner shall pay Brewery the following per package format of Brand Owner Products ordered by Brand Owner, subject to Brewery pricing changes on 60 days written notice.

Purchase Orders shall be paid for by Brand Owner upon completion of packaged beer by Brewery and before leaving the brewery premises.   Deposits of 25% of Purchase Orders are required to hold production schedule places.

**Schedule D**

**Supplemental Production and Packaging Service Terms**

In Brewery's preparation of packaged Brand Owner Products, brewery shall package the Brand Owner Products by canning on the Brewery's canning equipment using packaging materials provided by Brand Owner.  In the event that any materials (e.g. can, lid, label, can trays, Pack-Techs) are provided by the Brewery, which it is under no obligation to provide, Brand Owner shall pay Brewery an amount for such materials equal to the Brewery's out-of-pocket cost plus 15%.

In addition to the fees set forth on Schedule C and further in addition to any amounts payable to Brewery for additional canning supplies and materials set forth above, Brand Owner shall pay Brewery an additional fee equal to $_____ per [case/can/gallon/bbl][1] for the supplemental production and packaging services associated with such End Product.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10100 N. Santa Monica Boulevard, Suite 1450, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (specify): **Motion of Debtor and Debtor In Possession to Enter Into Contract with Third Party Brewery; Memorandum of Points And Authorities; Declaration of Lynne Weaver in Support Thereof**                          will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **12/04/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

　　See Attached Service List

[ X ] Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) __**12/04/2025**__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

　　See Attached Mailing List

[ X ] Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _12/04/2025_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDERAL EXPRESS**
The Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1634 / Courtroom 1639
Los Angeles, CA 90012

[ ]Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/04/2025 | Suzanne Johnson | /s/ Suzanne Johnson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## *SERVICE LIST*

**2:25-bk-16321-DS Notice will be electronically mailed to:**

*Moriah Douglas Flahaut (TR)*
*df@echoparklegal.com, C194@ecfcbis.com*

*Gregory K Jones on behalf of Debtor GRDN Hospitality, LLC*
*gjones@stradlinglaw.com, smjohnson@sycr.com;smjohnson@stradlinglaw.com*

*Raffi Khatchadourian on behalf of Interested Party Courtesy NEF*
*raffi@hemar-rousso.com*

*Bernard J Kornberg on behalf of Creditor Live Oak Banking*
*Company*
*bernie.kornberg@millernash.com,  edgar.rosales@millernash.com*

*Carissa A Lynch on behalf of Creditor CA Franchise Tax Board*
*Carissa.Lynch@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov*

*Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)*
*Noreen.Madoyan@usdoj.gov*

*United States Trustee (LA)*
*ustpregion16.la.ecf@usdoj.gov*

_Mailing List_

1 Touch Office Technology
PO Box 2226
Gardena, CA 90247


Airgas National Carbonation
PO Box 734673
Dallas, TX 75373-4673


Airgas USA LLC
PO Box 102289
Pasadena, CA 91189-2289


American Express Credit Card
American Express Business
PO Box 981535
El Paso, TX 79998-1535


Anachem Laboratories, LLC
140 Standard St
El Segundo, CA 90245-3832


Anthem Health Ins
Anthem Blue Cross
PO Box 659960
San Antonio, TX 78265-9146


Beleza Designs LLC
Attn General
62 Azure Pass Dr
Katy, TX 77494

Belmark Inc
PO Box 8814
Carol Stream, IL 60197-8814


Berkeley Yeast
2451 Peralta St
Oakland, CA 94607


Blue Label
3750 Lancaster New Lexington Rd SE
Lancaster, OH 43130


Brewers Association
PO Box 1679
Boulder, CO 80306


BSG Craftbrewing
Attn BSG
PO BOX 74769
Chicago, IL 60694-4769


California Bank & Trust Visa Card
California Bank & Trust
PO Box 85861
San Diego, CA 92186-5861


California Department of Tax
and Fee Administration
PO Box 942879
Sacramento, CA 94279-0055


California Craft Brewers Association
PO Box 807
Sacramento, CA 95812

California Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0531

Cameron Welding Supply
PO Box 266
Stanton, CA 90680

Citibank-Citi.com
Citi Advantage Credit Card
PO Box 70166
Philadelphia, PA 19176-0166

City of Inglewood
PO Box 743543
Los Angeles, CA 90074-3543

CLS Farms
7810 Robillard Road
Moxee, WA 98936

Concur Technologies Inc
62157 Collections Center Drive
Chicago, IL 60693

Crosby Hops
18564 Arbor Grove Rd NE
Woodburn, OR 97071

Crowler Nation
Attn Crowler Accounting Team
1820 Industrial Circle
Longmont, CO 80501

Crown Carton Company Inc
1820 E 48th Pl Unit C
Los Angeles, CA 90058


Cucamonga Medical Equipment
and Supplies
8400 Maple Place Suite 104
Rancho Cucamonga, CA 91730


D & D Engineering
119 W Hyde Park Blvd
Inglewood, CA 90302


Department of the Treasury Alcohol
and Tobacco Tax and Trade Bureau
PO Box 790353
St. Louis, MO 63179-0353


Dept of Industrial Relations
PO Box 511232
Los Angeles, CA 90051-3030


Dewey Pest Control
PO Box 7114
Pasadena, CA 91109-7214


DMM Packaging Inc
2401 Simpson St Ste A
Kingsburg, CA 93631


Don Thornburgh
466 Foothill Boulevard #220
La Canada Flintridge, CA 91011

Equipment Depot
12393 Slauson Ave
Whittier, CA 90606


Eurofins Microbiology
Laboratories Inc
8430 W Bryn Mawr Ave
Chicago, IL 60631


Fer studio
Attn Fer studio
1159 East Hyde Park Blvd
Inglewood, CA 90302


First Rate Electric
Attn Neville Milburn
5608 Clearsite St
Torrance, CA 90505-3254


Future Plan by Ascencus
23693 Network Place
Chicago, IL 60673-1236


Givaudan Flavors Corporation
1199 Edison Dr
Cincinnati, OH 45216


Grandstand
PO Box 3497
Wichita, KS 67201


Greater Los Angeles Zoo Association
5333 Zoo Drive
Los Angeles, CA 90027

GS1 US Inc
Dept 781271
PO Box 78000
Detroit, MI 48278-1271


Hemann Trust
7500 Agnew Ave
Los Angeles, CA 90045


Indie Hops
2505 SE 11th Avenue
Portland, OR 97202


InTouch Labels & Packaging
12 Technology Drive
North Chelmsford, MA 01863


Kaiser
PO Box 741562
Los Angeles, CA 90074-1562


Key Air Conditioning Co
10905 Laurel Ave
Santa Fe Springs, CA 90670


KHS USA Inc
PO Box 681014
Chicago, IL 60695-2014


KJ Can West LLC (Can-One)
1441 Huntington Drive
South Pasadena, CA 91030

LAX Equipment Inc
830 West Florence Avenue
Inglewood, CA 90301


Leverage House
1717 Capitol Ave
Sacramento, CA 95811


Linwood Engineering Inc
Attn AP
2301 Dupont Drive
Irvine, CA 92612


Live Oak Bank
Attn Keilah Spooner Assoc SA OfcSBB
1757 Tiburon Drive
Wilmington, NC 28403


Live Oak Line of Credit
1741 Tiburon Dr
Wilmington, NC 28403


Live Oak SBA Loan
1741 Tiburon Dr
Wilmington, NC 28403


Long Beach Jerky Co
1859 Berkshire Drive
Fullerton, CA 92833


Los Angeles County Fire Department
PO Box 513148
Los Angeles, CA 90051-1148

Los Angeles County
Sanitation District
PO Box 4998
Whittier, CA 90607-4998


Los Angeles County Tax Collector
Attn Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0110


Lyneer Staffing
PO Box 88911
Milwaukee, WI 53288-8911


Manchester Business Park 8740
S Sepulveda Blvd
Ste 100
Los Angeles, CA 90045


McCune Mechanical
174441 Brooklyn Avenue
Yorba Linda, CA 92886


MCG Boilers Inc
PO Box 913
Chino Hills, CA 91709


Microstar Keg Management LLC
PO BOX 912392
Denver, CO 80291-2391

Motus LLC
60 South Street
Boston, MA 02111


MUN CPAs
2901 Douglas Blvd
Ste 290
Roseville, CA 95661


Oregon Fruit Products LLC
Attn Chris
PO Box 13490
Salem, OR 97309


Pneumatic Scale Angelus
25236 Network Place
Chicago, IL 60673-1252


Pro Refrigeration Inc
326 8th Street SW
Auburn, WA 98001


Prospero Equipment Corporation
7787 Bell Road
Windsor, CO 95492


Saxco
PO Box 848701
Los Angeles, CA 90084-8701


So Cal Gas
PO Box C
Monterey Park, CA 91756-5111

Southern California Edison
1551 W San Bernardino Road
Covina CA 91722-3407


Sovereign Flavors Inc
Attn Belen
4020 W Chandler Ave
Santa Ana, CA 92704


Sovos Compliance LLC
PO Box 347977
Pittsburgh, PA 15251-4977


Spectrum Business
PO Box 60074
City of Industry, CA 91716-0074


Swift Chip Inc
9415 Culver Blvd
Culver City, CA 90232


Systems Interface Inc
10802 47th Ave W
Mukilteo, WA 98275


The Hanover Insurance Group
PO Box 580045
Charlotte, NC 28258-0045


Troy Scarlott
7105 Hillgreen Drive
Dallas, TX 75214

Twining
2883 East Spring St
Ste 300
Long Beach, CA 90806


Uline
PO Box 88741
Chicago, IL 60680-1741


UPS
28013 Network Pl
Chicago, IL 60673-1280


Vantaggio HR Ltd
31726 Rancho Viejo Rd
Ste 202
San Juan Capistrano, CA 92675


Verizon
PO Box 660108
Dallas, TX 75266-0108


VIP
402 Watertower Cir
Colchester, VT 05446


WHC Lab
Prospect Lower, Newcastle
Wicklow, Co A63H0K8


Yakima Chief Hops LLC
Attn YCH Orders
306 Division St
Yakima, WA 98902

Yervant Krikorian
1555 Temescal Ave
Norco, CA 92860


Zee Company Inc
412 Georgia Ave Ste 300
Chattanooga, TN 37403


Zion Packaging (formerly Aluminati)
1695 California Avenue
Corona, CA 92881


Doug Flahaut
Echo Park Legal, APC
2210 W. Sunset Blvd., #301
Los Angeles, CA 90026


Bernie Kornberg
Miller Nash LLP
340 Golden Shore, Ste 450
Long Beach, CA 90802


City of Inglewood
One Manchester Boulevard
Inglewood, CA 90301


Southern California Edison
P.O. Box 300
Rosemead, CA 91772-0002


Alliance Funding Group
Attn Brian Knox, CLFP
Legal Recovery Manager
18231 Irvine Boulevard
Tustin, CA 92780

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Noreen A Madoyan
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Carissa A Lynch
CA Franchise Tax Board
P. O. Box 1720
Mail Stop: A-260
Rancho Cordova, CA 95741-1720

CDTFA
PO Box 942840
Sacramento, CA 94240

Los Angeles County Tax Collector
225 N Hill St #1
Los Angeles, CA 90012

Country Malt Group
PO Box 51602
Los Angeles, CA 90051

Lynne M. Weaver
18025 Sandy Cape Drive
Pacific Palisades, CA 90272

Fora Financial West LLC Attn
Jared D. Feldman  519 8th
Avenue 11th Floor New York,
NY 10018-4581

Vox Funding, LLC
Attn Scott Greenberg
100 Park Ave 30th Floor New
York, NY 10017 -5516


MicroStar Keg Management, LLC
2401 15th Street
Denver, CO 80202
Attention:  Todd Erickson


Manchester Business Park
c/o ANR Asset Management Brokerage
8740 S. Sepulveda Blvd., #100
Westchester, CA 90045


Howard Camhi, Esq.
Michelman Robinson
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024


David Jordan
Bankruptcy Specialist
IRS
1220 SW Third Avenue, Suite G-O44
Portland, OR 97204


Brian Knox
Legal Recovery Manager
Alliance Funding Group
18321 Irvine Blvd.
Tustin, CA 92780